J-S33004-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
         v.   :
  :
  :
  :
DERRICK DVORAY ELVERTON   :
  :
      Appellant   :   No. 1183 WDA 2022

Appeal from the Judgment of Sentence Entered September 15, 2022
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001082-2020

BEFORE:   BENDER, P.J.E., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:       **FILED: December 18, 2023**

Appellant, Derrick Dvoray Elverton, appeals from the aggregate judgment of sentence of 9 to 18 years' incarceration, imposed after a jury convicted him of conspiracy to commit robbery and conspiracy to commit burglary.[1] On appeal, Appellant challenges the trial court's denial of his pretrial motions to suppress evidence, and to sever his case from his codefendants. He also challenges the sufficiency of the evidence to sustain his conspiracy convictions. After careful review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] After Appellant filed this appeal, his counsel, Tina M. Fryling, Esq., filed a petition to withdraw as his attorney based on "a conflict in that she was already representing a co-defendant in the case in his appellate proceedings." Petition for Leave to Withdraw as Counsel, 3/29/23, at 1. The trial court appointed William Hathaway, Esq., who entered his appearance on Appellant's behalf with this Court on March 22, 2023, and filed Appellant's brief on June 14, 2023. Thus, we hereby grant Attorney Fryling's petition to withdraw.

Appellant was charged, alongside codefendants Damarjon Beason, Anthony Blanks, and Marshawn Williams, with multiple offenses, including criminal homicide and attempted burglary, in connection with the death of Patric Phillips on December 7, 2019. Appellant filed several pretrial motions, including a motion to suppress evidence and a motion to sever his case. At a hearing conducted thereon, the following evidence was presented:

> Commonwealth witness Michael Toles testified that, in the waning days of October 2019, an individual with a tattoo depicting "wings on his neck," later identified as [Appellant], informed Toles and his friend, Marshawn Williams, that he knew precisely where Phillips, who sold marijuana from the back door of his home, kept his drugs hidden within his residence. Armed with this information, a plot was devised to gain entry into Phillips' home and steal the drugs: one individual would lure Phillips to the back door under the pretense of buying marijuana, at which time the others would ambush Phillips at gun point, gain entry to the residence, and search for the drugs. According to Toles, he, Williams, and another individual attempted to execute the plan sometime in November, but the plot was thwarted after a third individual's phone began to ring loudly as they approached the back door.
>
> Undeterred by this setback, they tried again weeks later on December 7th. On that day, Williams asked Toles if he would give him a ride along with [Appellant] and an individual Williams identified as "Little Marmar," and who police later identified as Damarjon Beason, to go see about the "Patric situation." Toles testified that Williams was carrying a Glock handgun on that day. Toles dropped the three off on 23rd Street, but eventually Williams called asking to be picked up near the intersection of 24th and Wayne Streets, where Toles found Williams, [Appellant], and Beason sitting on a porch. The three reentered Toles' vehicle, at which time Beason informed him they were "waiting for somebody to bring something." At approximately 5:23 p.m., Beason grabbed the attention of an individual walking past the vehicle in a crowd of people. Police later identified this individual as Anthony Blanks. According to Toles, Beason asked Blanks for his gun, which Blanks hesitantly relinquished to Beason after a short

- 2 -

conversation. Once Beason was in possession of the gun, he, Williams, and [Appellant] exited the vehicle onto the sidewalk and began walking towards Phillips' house at 750 East 24th Street. At roughly 5:37 p.m., they cut through to the backyard of Phillips' residence by way of the driveway of 758 East 24th Street and over a chicken wire fence separating the two properties.

At approximately 5:43 p.m., another individual, Daniel Dugan, arrived at Phillips' residence, parking his vehicle on 24th Street and making his way to the backyard. Dugan later told investigators that it was not unusual to find other individuals in the backyard as the backdoor was used as the main entrance to the residence, so he was not at first alarmed by the three's presence there. As he approached, however, an individual in a black coat revealed a handgun, pushing it into his side, forcing him to the back door, and demanding that he knock on the door. When Phillips answered the door, Dugan was pushed aside, and the individual with the gun took aim at Phillips' head. Phillips reached out and grabbed the gun, at which point Dugan heard a muffled gunshot. Philips fell to the ground with a gunshot wound to the head while the three individuals fled in an easterly direction. Meanwhile, Toles, who had remained parked at 24th and Wayne Streets, drove off when he heard what sounded like a gunshot.

Investigators later discovered spent 9mm shell casings in the backyard. They also found several items left behind in the path of flight from the scene, including a 9mm Ruger handgun, a space gray iPhone, a blue North Face jacket, and a pair of navy blue sweatpants. The gun was found lying on top of some leaves inside a cardboard box directly behind 758 East 24th Street. The jacket and sweatpants were found underneath a wooden wheelchair ramp at the front of 823 East 24th Street. The phone was found nearby, although not directly underneath the ramp.

The initial Erie Police Department investigation included a forensic analysis of the items left behind at the scene and surveillance video from neighboring properties, eventually identifying Beason and [Appellant] as two of the individuals present in Phillips' backyard the evening of December 7th. Criminal complaints were subsequently filed against them and a Preliminary Hearing was held on June 12, 2020; formal charges were brought by the

Commonwealth in Informations filed in July [of 2020].[2] Specifically, … [Appellant] was charged with criminal homicide/murder; first degree aggravated assault; second degree aggravated assault; robbery; conspiracy to commit robbery; persons not possess, use, manufacture, control, sell, or transfer firearms; firearms not to be carried without a license; recklessly endangering another person; possessing instruments of crime; … terroristic threats[; burglary; and conspiracy to commit burglary].

Trial Court Opinion (TCO), 11/12/21, at 2-4 (citations to the record omitted).

Appellant filed his omnibus pretrial motion on November 10, 2020, and an amendment thereto on January 29, 2021. Therein, Appellant challenged, *inter alia*, the sufficiency of a December 9, 2019 warrant to search the gray iPhone,[3] as well as the validity of a December 16, 2019 warrant to seize "all records" possessed by Uber Technologies, Inc., "related to the phone number associated with the iPhone and the iCloud account [for] derrickelverton@iCloud.com from December 1, 2019 through December 8, 2019…." *Id.* at 62. Appellant also moved to sever his trial from his three codefendants. After conducting a hearing on June 3, 2021, the court denied those aspects of Appellant's pretrial motions by opinion and order entered on November 12, 2021. His case proceeded to a jury trial and, on June 9, 2022, the jury convicted Appellant of conspiracy to commit robbery and conspiracy to commit burglary. It acquitted him of all other charges, including robbery,

---

[2] On May 27, 2021, the Commonwealth joined Anthony Blanks' and Marshawn Williams' trials with Appellant's and Beason's.

[3] A pink iPhone was also recovered during the investigation of this case, and was at issue in Appellant's pretrial suppression motions. Thus, for clarity, we will refer to the phone at issue herein as the gray iPhone.

burglary, and second-degree (felony) murder. On September 15, 2022, the court sentenced Appellant to the aggregate term set forth *supra*.

Appellant filed a timely notice of appeal, and he also complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed a responsive Rule 1925(a) opinion on February 6, 2023. Herein, Appellant states the following four issues for our review:

> A. Whether the [trial] court erred in its pretrial suppression ruling by concluding that the [i]Phone at issue constituted abandoned property and thus … Appellant lacked any privacy right as to the … [i]Phone to challenge the legality of the police search of the phone?
>
> B. Whether the [trial] court erred in holding that two search warrants, relating to Uber Technologies, Inc[.,] and another seeking … Appellant's [iCloud] identification, respectively, were not overbroad and consequently upholding the validity of said warrants and the fruits thereof?
>
> C. Whether the [trial] court erred in denying … Appellant's severance motion from co-defendant, Damarjon Beason, since the joinder would be patently prejudicial, which was further exacerbated by the joinder of two additional [*sic*] co-defendants?
>
> D. Whether the evidence presented at trial was insufficient to support … Appellant's convictions for conspiracy to commit robbery and conspiracy to commit burglary?

Appellant's Brief at 3 (unnecessary capitalization omitted).

Appellant's first two issues challenge the court's denial of his pretrial motions to suppress evidence recovered from the gray iPhone, and the records seized from Uber Technologies, Inc.

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining

whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (cleaned up).

We begin by addressing Appellant's challenge to the legality of the search of the gray iPhone. Initially, Appellant cursorily claims that "[t]he facts as stated within the Affidavit of Probable Cause do not establish that evidence of a crime would be found in the … [gray] iPhone[,]" and that the warrant to search the phone was "overbroad, essentially allowing an unlimited search of the device for evidence of illegal activity." Appellant's Brief at 7. Problematically, Appellant provides no meaningful discussion of either of these claims.

When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. *Commonwealth v. Gould*, … 912 A.2d 869, 873 (Pa. Super. 2006). The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. *Id.*; Pa.R.A.P. 2119(a), (b), (c). Citations to authorities must articulate the principles for which they are cited. Pa.R.A.P. 2119(b).

- 6 -

> This Court will not act as counsel and will not develop arguments on behalf of an appellant. *Gould*, 912 A.2d at 873. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived. *Id.*; Pa.R.A.P. 2101.

*Commonwealth v. Kane*, 10 A.3d 327, 331 (Pa. Super. 2010). Here, we deem Appellant's challenges to the warrant for the gray iPhone waived based on his failure to develop these claims.

In any event, even if not waived, we would agree with the trial court's conclusion that Appellant abandoned the iPhone and, therefore, he had no standing to challenge the search thereof, even if the warrant was defective.

> Generally, the Fourth Amendment requires that law officers obtain a warrant before they intrude into a place of privacy; however, an exception to the warrant requirement exists when the property seized has been abandoned. *Commonwealth v. Clark*, 746 A.2d 1128, 1133 (Pa. Super. 2000). "[T]o prevail on a suppression motion, a defendant must demonstrate a legitimate expectation of privacy in the area searched or effects seized, and such expectation cannot be established where a defendant has meaningfully abdicated his control, ownership or possessory interest." *Commonwealth v. Dowds*, … 761 A.2d 1125, 1131 ([Pa.] 2000). Simply put, "no one has standing to complain of a search or seizure of property that he has voluntarily abandoned." *Commonwealth v. Shoatz*, … 366 A.2d 1216, 1220 ([Pa.] 1976).

*Commonwealth v. Kane*, 210 A.3d 324, 330 (Pa. Super. 2019).

Instantly, the trial court provided a detailed analysis to support its decision that Appellant abandoned the iPhone. *See* TCO at 72-84. On appeal, Appellant presents only bald and unsupported challenges to that decision, with no developed discussion or legal analysis in support thereof. *See* Appellant's Brief at 8-9. For instance, although the trial court discusses specific evidence

that, in its view, proved Appellant intended to abandon the iPhone, **see** TCO at 79-81, Appellant only cursorily responds that "[t]here is no evidence that … [A]ppellant sought or displayed any modicum of intention to abandon his cellphone and forego any expectation of its contents." Appellant's Brief at 8. Such undeveloped claims do not demonstrate any error in the court's detailed and well-reasoned analysis of the abandonment issue, which we adopt herein. Accordingly, even had Appellant not waived his challenge to the validity of the search warrant for the iPhone, we would agree with the court's conclusion that he lacked standing to challenge the search of the iPhone based on his abandonment thereof for the reasons set forth by the court in its November 12, 2021 opinion. **See** TCO at 72-84.

In Appellant's second issue, he claims that "the [trial] court erred in holding that the two search warrants regarding Uber Technologies and for Appellant[']s Apple ID were not overbroad and sustaining the legality of the execution of the respective search warrants[.]" Appellant's Brief at 9 (unnecessary capitalization omitted). Although Appellant mentions two warrants in his statement of the issue, the body of his argument only addresses the December 16, 2019 warrant "for all listed records under the control of Uber Technologies, Inc.[,]" pertaining to Appellant's phone number and his iCloud account. **Id.** Thus, we address only that warrant herein.

First, Appellant contends that the information gleaned from the allegedly illegal search of the gray iPhone was included in the Affidavit of Probable Cause for the at-issue warrant and cannot be considered in determining whether

probable cause existed to seize the records from Uber Technologies. *Id.* at 10. As set forth in our discussion of Appellant's first issue, he has not demonstrated that the search of the gray iPhone was unlawful and, thus, the information recovered from the phone was properly assessed in determining if the December 16, 2019 warrant was supported by probable cause.

To the extent that Appellant claims that probable cause was still lacking, even with the information recovered from the gray iPhone, we conclude that his argument is undeveloped and, therefore, waived. Appellant only baldly claims that "the affidavit sets forth general conclusions not supported by any facts giving probable cause to believe that any evidence would be found" in the seized records. *Id.* Appellant does not provide any further discussion or legal authority to support this single sentence. Thus, his challenge to the probable cause to support the warrant is waived. *See Kane*, 10 A.3d at 331.

Appellant additionally argues that the warrant was overbroad. The trial court provided an in-depth discussion of the law pertaining to this claim, *see* TCO at 32-44, as well as an analysis of the at-issue warrant in the present case, *id.* at 62-63. Appellant's brief argument challenging the court's decision on appeal is inadequate to demonstrate any error therein. *See* Appellant's Brief at 10-12. Accordingly, we adopt the court's analysis of the overbreadth

issue as our own, and find Appellant's second issue meritless for the reasons set forth by the court therein.[4]  *See* TCO at 32-44; 62-63.

In Appellant's third issue, he argues that the court erred by denying his motion to sever his trial from co-defendant Beason's because "there was a likelihood of antagonistic defenses" between them.  Appellant's Brief at 13.  Appellant also claims he was prejudiced by his trial not being severed from Marshawn Williams' trial, as certain witnesses were permitted to testify about inculpatory statements Williams made after the murder, which Appellant claims could have caused the jury to convict him "based upon mere guilt by association…."  *Id.* at 15.

No relief is due.  Initially, Appellant offers no argument to support his claim that he and Beason had antagonistic defenses and, thus, should have been tried separately.  Consequently, he has waived this argument for our review.  *See Kane*, 10 A.3d at 331.  Likewise, Appellant has also waived his claim that his and Williams' trials should have been severed because he was

---

[4] We also observe that, in the trial court's Rule 1925(a) opinion, it notes that,

> after it rendered its decision in November of 2021, our Supreme Court issued its opinion in **Commonwealth v. Green**, 265 A.3d 541 (Pa. Dec. 22, 2021), which appears consistent with the approach taken by this [c]ourt in determining whether the searches of digital evidence in this case were proper. **See id.** at 553-54 ("[W]e hold that the [**Commonwealth v.**] **Grossman**[, 555 A.2d 896 (Pa. 1989),] standard for an overbreadth challenge applies equally to the search of a digital space as it does for a physical search.").

Trial Court 1925(a) Opinion (Rule 1925(a) Opinion), 2/6/23, at 2.  We agree with the court that its analysis is consistent with **Green**.

prejudiced by the admission of Williams' inculpatory statements. Appellant did not raise any claim in his Rule 1925(b) statement pertaining to the severance of his trial from Williams' case, nor any challenge to the admission of Williams' inculpatory statements. Therefore, these arguments are waived. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); Pa.R.A.P 1925(b) Order, 10/11/22, at 1 (warning that "[a]ny issue not properly included in said Statement, timely filed and served pursuant to Pa.R.A.P. 1925(b), shall be deemed waived for purposes of appeal") (unnumbered page); *see also Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.*, 88 A.3d 222, 225 (Pa. Super. 2014) (*en banc*) ("[I]n determining whether an appellant has waived his issues on appeal based on non-compliance with [Rule] 1925, it is the trial court's order that triggers an appellant's obligation[. T]herefore, we look first to the language of that order.") (citations omitted; some brackets added).

In any event, even if not waived, we would discern no error in the court's decision not to sever Appellant's case from Beason's, for the reasons set forth by the court in its November 12, 2021 opinion. *See* TCO at 96-102.

Finally, Appellant challenges the sufficiency of the evidence to sustain his convictions for conspiracy to commit robbery and conspiracy to commit burglary. From what we can discern, Appellant seemingly believes that the jury's acquitting him of robbery and burglary demonstrates that the jury believed he renounced his participation in those crimes and, thus, it follows

that he renounced his participation in the **conspiracy to commit** those offenses, as well. According to Appellant, there was evidence to support the jury's alleged finding that he renounced his participation in the conspiracies, including testimony "that [he] did not leave the backyard area the entire time and was positioned by the gate while the other two individuals actively approached the door and then placed a gun to the head of Dugan while then gaining entry into the residence whereupon Philips was shot by one of the individuals." Appellant's Brief at 18. Appellant insists that "[t]his course of conduct is fully consistent with a renunciation of any underlying conspiracy on the part of [Appellant] and would support that this was the calculus employed by the jury in applying the jury instruction as to renunciation[,]" which was provided "as it pertained to the conspiracy charges under 18 Pa.C.S. § 903(f)...." **Id.** at 17, 18.

We disagree. Initially, we note:

A claim challenging the sufficiency of the evidence presents a question of law. We must determine whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt. We must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict.

Our Supreme Court has observed:

The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

- 12 -

Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Ratsamy*, … 934 A.2d 1233, 1236 n. 2 ([Pa.] 2007).

*Commonwealth v. Thoeun Tha*, 64 A.3d 704, 709–10 (Pa. Super. 2013) (cleaned up; some internal citations omitted).

Additionally,

[a] criminal conspiracy conviction requires proof of:

(1) an intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator and (3) an overt act in furtherance of the conspiracy. Because it is difficult to prove an explicit or formal agreement to commit an unlawful act, such an act may be proved inferentially by circumstantial evidence, *i.e.,* the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators.

Circumstantial evidence can include, but is not limited to, the relationship between the parties, the knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

*Id.* at 710.

Here, we are unconvinced by Appellant's argument that the jury must have concluded that he renounced his participation in the conspiracy to commit robbery and burglary because it acquitted him of those predicate offenses. As the trial court observed:

"It is well settled that the jury is presumed to follow the trial court's instructions[.]" *Commonwealth v. Cash*, 137 A.3d 1262, 1280 (Pa. 2016). Here, the jury was instructed on the renunciation defense to conspiracy twice, and no juror raised

- 13 -

concerns with the verdict when they were polled at the conclusion of the trial. If anything, we must assume the jury was fully aware of, but simply chose not to credit, [Appellant's] renunciation defense. As such, the argument is without merit.

Rule 1925(a) Opinion at 5. The court also pointed out that,

even if there were inconsistencies, "inconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal." *Commonwealth v. Burton*, 234 A.3d 824, 829 (Pa. Super. 2020) (quoting *Commonwealth v. Barnes*, 167 A.3d 110, 120 (Pa. Super. 2017) (*en banc*)). "When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, the court looks upon the acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity." *Id.* That the jury may have exercised its prerogative to spare [Appellant] convictions for robbery and felony murder is not a basis to assume that it found he satisfied the elements of a complete and voluntary renunciation of the alleged conspiracies[,] too. At most, it is an indicator that the jury was willing to exercise its powers of leniency only so far.

In the end, we cannot know for sure why the jury chose to convict [Appellant] on the conspiracy charges, while acquitting him of robbery and felony murder. However, "we refuse to inquire into or to speculate upon the nature of the jury's deliberations or the rationale behind the jury's decision. Whether the jury's verdict was the result mistake, compromise, lenity, or any other factor is not a question [to be considered on] review." *Commonwealth v. Miller*, 35 A.3d 1206, 1213 (Pa. 2012).

*Id.* at 4-5.

We agree with the trial court's rationale regarding Appellant's renunciation argument. We further add that, to the extent Appellant suggests that his acquittal for the predicate offenses of robbery and burglary invalidates his convictions for conspiring to commit those crimes, this argument is also meritless. *See* Appellant's Brief at 16 ("If the jury concluded that … [A]ppellant could not be criminal [*sic*] culpable for the predicate offenses of

robbery and burglary[,] and logically that would also eliminate any criminal culpability under the felony murder counts as a matter of course[,] then there is no legal or factual foundation to then also render a verdict of guilty as to conspiracy to commit robbery and conspiracy to commit burglary lacking any predicate offenses."). Nothing in the above-quoted law indicates that a person must **complete** the predicate offense in order to be convicted of conspiracy, and Appellant provides no legal support for this claim. Instead, to be convicted of criminal conspiracy, an individual must only intend to commit an unlawful act, agree with a co-conspirator to do so, and commit an overt act in furtherance of that agreement. Appellant does not explain how the evidence was insufficient to prove any of these elements. Therefore, his sufficiency challenge does not warrant relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

12/18/2023

- 15 -